FILED
2015 Oct-28  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA MICHELLE SPRINGER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 5:14-CV-1827-VEH |
| | ) |
| CAROLYN W. COLVIN, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Cynthia Michelle Springer ("Springer") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied Springer's application for a determination of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Springer timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1]

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

The court has carefully considered the record and, for the reasons that follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## II.   FACTUAL AND PROCEDURAL HISTORY

At the time of alleged onset of disability, Springer was 37. (*See* Tr. 44–45). She is a high school graduate. (Tr. 45–46). Springer previously worked as a short order chef, cashier, and as a stocker in retail. (Tr. 217–18). Claimant alleged onset of disability on March 1, 2011, due to systemic lupus erythmatous, anxiety, hypertension, and insomnia. (Tr. 217).

Springer filed an application for disability insurance benefits, *see* 42 U.S.C. § 420 , and an application for Supplemental Security Income benefits, *see* 42 U.S.C. § 1382, on January 17, 2012. These applications were denied initially by the State agency, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 23, 2012. (Tr. 105). The hearing was held on February 26, 2013. (Tr. 160). The ALJ issued an opinion denying benefits to Springer on April 18, 2013, concluding that she did not have an impairment or a combination of impairments listed in or medically equal to the ones listed in the Regulations. (Tr. 25). The ALJ found that Springer retained residual functional capacity to perform work at all levels of physical exertion and that there would be jobs available in the economy that would accommodate her residual limitations. (Tr. 28–38).

The Appeals Council denied review of the ALJ's decision on July 23, 2014, making the ALJ's decision the final agency decision on the matter. (Tr. 1). Having exhausted all administrative remedies, Springer moved for judicial review in this court pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) (disability insurance and supplemental security income, respectively) on September 25, 2014. (Doc. 1). The Commissioner responded on January 20, 2015. (Doc. 8). Springer filed a brief in support of her position on March 4, 2015, doc. 11, and the Commissioner submitted her brief on March 24, 2015. (Doc. 12).

## III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

4

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

5

V.   <u>**ALJ FINDINGS**</u>

After consideration of the entire record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of Social Security Act through March 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: generalized anxiety disorder, major depressive disorder, panic disorder without agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.526, 416.920(d), 416.925 and 416.926).

5.    The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2001, the alleged onset date, through June 30, 2006, the date last insured.

(Tr. 24-27).

VI.   <u>**ANALYSIS**</u>

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Springer makes two explicit arguments in favor of reversing the ALJ's decision. (Doc. 11 at 2). First, she argues that "ALJ failed to properly consider the opinion of plaintiff's treating physician, Dr. Pool," *id.* at 7, "[t]he ALJ failed to properly consider plaintiff's impairments pursuant to the Eleventh Circuit's 'sight abnormality' standard." (*Id.* at 10).[3] Springer alludes to, but does not fully develop, a third argument, that the RFC determination as to physical disability was not based on substantial evidence (*Id.* at 11). The court will address these contentions in turn.

Before proceeding, however, a brief discussion of the scope of this appeal is in order. The ALJ considered both Springer's physical and mental impairments in reaching the decision that Springer is not disabled. On appeal, Springer does not challenge the ALJ's findings on her mental impairments, although the physician's opinion mentioned that she had mental impairments. Thus, the basis of Springer's

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[3] It appears that Springer meant to refer to the Eleventh Circuit's "slight abnormality" standard.

claim must be that, had the ALJ considered her physical impairments properly,[4] there would have been sufficient medical evidence to give dispositive weight to the physician's opinion. As such, the resolution of this appeal turns upon whether there was substantial evidence for the ALJ's determination about her physical impairments. *See Sanchez v. Commissioner*, 507 F. App'x. 855, 856 n. 1 (11th Cir. 2013) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330) (an appellant's failure to challenge specific findings is an effective abandonment of a challenge to them).

### A. The ALJ did not err in discounting Dr. Pool's letter, nor was there a Duty to Recontact the Physician

Springer makes two distinct, yet related, claims on the subject of the letter from Dr. Pool. The first argument is that the ALJ erred in not giving substantial weight to Dr. Pool's opinion that Springer is disabled. (Doc. 11 at 7–8). Based on her conclusory arguments, Springer appears to claim that a letter from a doctor, saying a person is disabled, is a self-executing permission slip to receive disability payments. This is not the law. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) ("merely confirming claimant's diagnosis" is insufficient to establish disability); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("[The Commissioner is] responsible for making the determination or

---

[4] Either by themselves or cumulatively with her mental impairments, but which of these is not important.

decision about whether you meet the statutory definition of disability.").

Springer began her argument by reproducing Dr. Pool's letter as follows:[5]

> "Cindy [Springer] is well known to me and has multiple problems that include systemic lupus erythematosus, hypertension, anxiety, depression, and insomnia. **Her functional capacity is severely limited to the point that she is unable to perform in the workplace.** In my opinion, Ms [sic] [Springer] is disabled secondary to medical disease and should be considered for long term disability."

(Doc. 11 at 8). Springer proceeds to list her ailments, and concludes "if Dr. Pool's opinion had been given credible weight, the ALJ would have found Plaintiff disabled upon these severe impairments." *Id.* Attempting to further undermine the ALJ's decision, Springer argues "Dr. Pool's records indicate severe impairments causing significant symptoms which preclude work activities." *Id.* at 9. In her argument, Springer offers no analysis as to *why* her impairments are disabling, which she must. *Johns*, 821 F.2d at 551. Her claim is a Descartian one: "I have many sicknesses, ergo disabled." Because Dr. Pool's unadorned statement is so clearly not automatically entitled to controlling weight under both the regulations, 20 C.F.R. §§ 404.1527(d) & 416.927(d), and the Eleventh Circuit caselaw, *Lewis*, 125 F.3d at 1440; *Johns*, 821 F.2d at 555, it is difficult to escape the conclusion that Springer's real request here

---

[5] Dr. Pool's letter refers to Cindy Springer as Cindy Royster, which was a previous name. (Tr. 189).

is to disregard them all. The court declines to do so.

A more charitable, albeit less natural, reading of Springer's complaint about the weight given to the letter is that the ALJ lacked 'good cause;' i.e., a basis in substantial evidence, to discount Dr. Pool's letter. The Eleventh Circuit requires that a treating physician's opinion ("TPO") " be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis*, 125 F.3d at 1440. '[G]ood cause' to discount a TPO exists where "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medial records," *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis*, 125 F.3d at 1440).

Here, the ALJ discounted Dr. Poole's opinion because 1) it was a conclusory statement that Springer was disabled, 2) the medical records did not support the opinion, and 3) because the records reflect that only Ashley Wise, not Dr. Pool, saw Springer. (Tr. 32). In the parlance of *Phillips*, the ALJ thought the opinion was not bolstered by the evidence, and the physician's opinion was conclusory. Working backwards by starting with the ALJ's third reason, the fact that Ashley Wise was the only person in the Med-West records to see Springer is sufficient "relevant evidence as a reasonable person would accept as adequate to support [the] conclusion,"

10

*Bloodsworth*, 703 F.2d at 1239, that the letter was entitled to little weight. A finding by a non-examining physician is not sufficient evidence to determine disability, *cf. Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians [...] standing alone do not constitute substantial evidence."), so such an opinion cannot be given substantial weight. *See* 20 C.F.R. § 404.1527(c)(1) ("[W]e give more weight to the opinion of a source who has examined you.").

Turning to the second factor, the ALJ's determination that the medical records did not support a finding of total disability was based on substantial evidence. As to Springer's physical impairments, the ALJ found that the Med-West records indicated that Springer had no acute distress and normal musculoskeletal, neurological, skin, and cardiovascular systems. (Tr. 31, 295–308). The consultative physician, Dr. Sharma, also reported that she had normal gait, squat, heel walk, toe walk, 5/5 motor strength, intact senses, normal grip, normal fine and gross manipulation. (Tr. 268–70). The ALJ noted this. (Tr. 31). Dr. Sharma also diagnosed her with lupus, and noted tenderness to palpation in both ankles, knees, wrists, elbow joints, the thoracic spine, lumbrosacral spine, and paraspinal muscles. (Tr. 269–70). The Med-West records also reflected, although the ALJ did not discuss it, that she suffered from lupus, experienced severe pain, and she even directly reported on one occasion that her

lupus was flaring up. (Tr. 284, 295, 297, 299). But substantial evidence is a standard that falls below preponderance, *Bloodsworth*, 703 F.2d at 1239, and it is of no moment that this court might have reached a different conclusion on the issue. *See Walden*, 672 F.2d at 838. The ALJ adduced substantial evidence showing that Springer was not physically disabled, even in light of some countervailing information showing Springer did have lupus flare ups and experienced pain related to them.

Finally, the ALJ discounted the letter because it was "an assessment of the claimant's ability to perform work activity, which is an opinion on an issue reserved to the Commissioner." (Tr. 32 (citing 20 C.F.R. § 404.1527(e)(2)). It is true that only the Commissioner's determination of disability has legal effect, but an ALJ is not free to disregard a TPO solely on the basis that it speaks to the issue of disability if it is otherwise supported by the medical record. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

Springer's second argument is that the ALJ was required to recontact Dr. Pool "for clarification" because she provided an opinion "on issues reserved to the commissioner and the basis for such [opinion is] not clear to us." (Doc. 11 at 9 (quoting SSR 96-5p)). The Commissioner correctly counters that the general rule of mandatory recontact established by SSR 96-5p was abandoned by the Administration

in 2012. (*See* Doc. 12 at 9 n. 5 (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,655–57 (Feb. 23, 2012) (to be codified at 20 C.F.R. pt. 404 & 416) [hereinafter "New Rule"])). The New Rule indicates that where "the evidence is consistent but we have insufficient evidence to determine whether you are disabled," 20 C.F.R. §§ 404.1520b(c); 416.920b(c), "[w]e *may* recontact your treating physician." *Id.* §§ 404.1520b(c)(1); 416.920(c)(1) (emphasis added).

The New Rule reflects the wisdom that the ALJ is in the best position to determine the most expeditious way to resolve a disability claim. *See Cradle v. Colvin*, 2014 WL 6633201, at *2 (E.D.Pa.Nov. 24, 2014) ("The SSA intended the decision to recontact a treating physician to be discretionary, not mandatory."); How We Collect and Consider Evidence of Disability, 76 Fed. Reg. 20,282, 20,283 (Apr. 12, 2011) ("This proposed change would give our adjudicators the discretion to determine the best way to address these issues and obtain the needed information more quickly and efficiently.").

Of course, if the record were under-developed, and therefore the ALJ's decision to discount the letter were therefore not based upon substantial evidence, *Henry v. Commissioner*, --F.3d-- 2015 WL 5778938, *3 (11th Cir. Oct. 5, 2015), the cause would have to be remanded. But even under the old rule of mandatory recontact, the court was not required to remand the case if the ALJ's decision was

supported by substantial evidence. *See Robinson v. Astrue*, 365 F. App'x. 993, 999 (11th Cir. 2010); *Johnson v. Barnhart*, 138 F. App'x. 186, 189 (11th Cir. 2005). *A fortiori*, where recontact is discretionary, the court should not remand if the ALJ's findings were otherwise supported by substantial evidence. Ultimately, the role of the district court in these cases is to assess whether substantial evidence supports the ALJ's decision, not to check his homework,[6] ensuring everything was perfectly reasoned and explained. This is not a case in which the record is inadequately developed, because, as discussed, substantial evidence supports the ALJ's decision to discount Dr. Pool's letter.

### B. The ALJ's Treatment of Lupus as Non-Severe is Not Based on Substantial Evidence, but the Error is Harmless

The legal rule governing determination of severity is that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). This is a "de minimis standard." *Stratton v. Bowen*, 827 F.2d 1447, 1450 (11th Cir. 1987). Springer does

---

[6] *Cf. Tennessee v. Lane*, 541 U.S. 509 (2004) (Scalia, J., dissenting) ("[T]he courts (and ultimately this Court) must regularly check Congress's homework to make sure that it has identified sufficient constitutional violations to make its remedy congruent and proportional.").

not appear to claim that the ALJ failed to apply the correct rule, and the court finds that the ALJ accurately described it: "the undersigned does not find the record supports these impairments cause more than minimal functional limitations in the claimant's ability to do work activity." (Tr. 31).

Springer does claim, however, that the ALJ's decision not to treat lupus as severe is not based on substantial evidence. The court agrees. Severity "is a threshold inquiry," allowing "only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The ALJ's determination that Springer's lupus is one of these "most trivial impairments" is not supported by substantial evidence.

The ALJ listed several reasons in support of treating claimant's lupus as non-severe: diagnosis of lupus "by history and not by blood work," "little to any evidence of lupus flare ups or abnormalities on clinical examinations," "no significant impairment associated with lupus anywhere in the medical record," and "little to any complaints of severe pain and discomfort, inability to function at times, or confinement to bed for periods as long as a week more at a time." (Tr. 31).

It is not entirely clear what the ALJ meant when he said "by history and not by blood work," but presumably, this is a suggestion that she does not, in fact, have lupus. The record reflects that she takes hydroxychloroquine sulfate for lupus, tr. 259,

271, 282, which would be an exceedingly odd thing to do if she did not have the disease.[7] Further, the ALJ's claim that the record is essentially devoid of evidence of lupus-related impairments and pain is wrong. At five of her nine visits to Med-West, lupus was listed as a co-morbid disease with her other symptoms. (Tr. 285, 295, 297, 299, 310). On two of those occasions, she complained of severe pain. (Tr. 283, 295). On April 5, 2012, Springer complained specifically that her lupus was flaring up, tr. 285, and Ashley Wise refilled Springer's prescription for severe pain. (Tr. 284)

The ALJ noted that the claimant denied having skin rashes or lesions, heat or cold intolerance, fatigue, or frequent illness in her April 2012 visit to Med-West, Tr. 31, but this is the very same visit at which she complained that her lupus was flaring up, and where Wise noted that Springer's ear canal and tonsils were "erythmatous" (Tr. 283–85). Contrary to the ALJ's suggestion, the record of this visit does not indicate that Springer denied suffering from fatigue. Further, lupus is a disease that is subject to flare ups and is somewhat protean in symptomatology, *see* tr. 53, so the lack of external rashes and the presence of internal inflammation on one day is not very probative of whether Springer had lupus.

Finally, the ALJ cited a number of findings by the consultative physician

---

[7]  The medication could also be used to treat malaria, but no one has suggested that Springer has that. *See W.H.O. Model List of Essential Medicines* § 6.5.3.1, WORLD HEALTH ORGANIZATION, http://www.who.int/medicines/publications/essentialmedicines/en (Aug. 2015).

indicating that Springer has "normal musculoskeletal, neurological, skin, reflexes, motor, and sensory function, and extremities, normal range of motion of the spine, hips, knees, ankles, eblows, wrists, dexterity, and grip strength, and normal gait, station, and coordination." (Tr. 33). The ALJ omitted findings by the consultative physician that Springer had "tenderness to palpation (TTP) in the thoracic spine, lumbosacral spine, and paraspinal muscles." (Doc. 11 at 6 (citing Tr. 269)) and TTP in both ankles, elbows, and knees. (Tr. 269).

The evidence in the record more than preponderates against the ALJ on whether Springer's lupus is more than trivial, and his determination that her lupus is not severe is therefore not based on substantial evidence. This is especially so where his chief argument, the lack of proof of Springer's condition, is flatly contradicted by the record. While severe impairments must be compared against the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ's failure to do so here is harmless error.[8]

The Courts of Appeal "have long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *accord Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). It is

---

[8] Further, Springer did not claim that any of her impairments met or equaled the listed disabilities. (Tr. 262).

harmless error for an ALJ to fail to label *any* impairments severe if he "enumerat[es] and evaluat[es] all of the impairments and symptoms alleged and explain[s] his reasoning based on the record and the law" in steps four and five. *Perry v. Astrue*, 280 F. App'x 887, 894 (11th Cir. 2008). It follows, then, that the mislabeling of a single impairment, rather than a complete failure to undertake step two, can be similarly remedied.

### C. The ALJ Properly Considered Lupus in His Opinion, and His Finding of No Physical Disability Was Based on Substantial Evidence

Step four requires the calculation of the claimant's residual functional capacity, and as Springer notes, the ALJ must consider both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Springer complains that, even if the lupus was properly treated as non-severe, the ALJ should have considered it in determining her RFC, but the ALJ did. (Tr. 33). She further argues that because he did not consider lupus while determining the RFC (even though he did), the decision cannot be based upon substantial evidence. In keeping with the general blunderbuss motif that Springer introduced at the end of her brief, she does not explain why the RFC determination lacks a basis in substantial evidence. Even though Springer did not explicitly ask for it, the court will consider whether the ALJ's physical RFC determination was based on substantial evidence, since it will help with the harmless

error analysis. The short version: calling lupus severe would not have changed a thing.

There were essentially four distinct pieces of evidence in the record that dealt with the effects of Springer's impairments upon her ability to work. First was the letter from Dr. Pool, which the ALJ properly disregarded as described in section VI.A. Second and third were the set of records from Ashley Wise's evaluations and Dr. Sharma's report, respectively, which were discussed in sections VI.A and VI.B. When considered in totality, these reports, the reader may recall, were ambiguous as to the effect lupus had on Springer.  Fourth are two nearly identical statements from Springer and her mother, plus Springer's testimony [collectively "statements"], all of which the ALJ examined in considering her RFC. The statements were by far the most descriptive evidence in the record of how Springer's impairments affected her ability to work and perform her daily tasks. Additionally, aside from the conclusory letter from Dr. Pool, the statements were the *only* evidence in the record describing how Springer's lupus affected her.

The statements describe Springer's life: Springer and her daughter get up at the same time every day, eat, and watch television for several hours, tr. 223, 242, although she claims to only be able to pay attention to anything for thirty minutes at a time. (Tr. 228). She attempts to do chores, cleans, does laundry, and bathes her

daughter, but it takes her all day to do 'simple 'chore[s].' (Tr. 225, 242). She can cook for herself, although she only cooks a large meal once a month. (Tr. 225). Springer can leave the house, and she shops for groceries and household items. (Tr. 226). She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (Tr. 226).

Springer claims that her lupus flares two to three times a month for one to two weeks at a time. (Tr. 54). As a result of the flare ups, she claims to have pain all through her body, particularly in her legs and feet, causing her to have great difficulty walking, tr. 54, to the point that she can only walk about a block at a time. (Tr. 228). She must stop to rest after each block. (Tr. 228). She also claims to have trouble, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. (Tr. 228).  In general, pain limits her physical activities and causes her to have difficulty sleeping. (Tr. 247). She bathes her daughter, although she claims to be unable to lift her. (Tr. 55, 242). Springer claims that her husband does all of the yard work and provides most of the care for her three year old daughter, but he is also applying for disability due to neck and back pain. (Tr. 63).

Where, as here, the claimant alleges pain (or another subjective impairment), the ALJ must analyze it using the pain standard. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* While subjective testimony of pain, supported by medical evidence, is sufficient to establish disability, the ALJ may discredit such testimony. *Id.* If he elects to do so, "he must articulate explicit and adequate reasons for doing so." *Id.*

The ALJ essentially decided not to credit any of the statements, and lawfully—if not judiciously—at that. He offered three reasons for doing so: 1) "significant inconsistencies in the record as a whole," tr. 34, 2) "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," tr. 35, and 3) "the relatively weak medical evidence." (Tr. 35).[9]

The first of the ALJ's reasons is the strongest, because he identified a sufficient number of contradictions that there is substantial evidence supporting his decision to give little weight to these statements. In particular, the ALJ noted that despite her

---

[9] In discussing the distinct issue of Springer's ability to afford mental health treatment, the ALJ made the observation that because she smoked a pack of cigarettes a day, "the claimant's lack of treatment is not due to any inability to afford it." (Tr. 34), as is apparently his wont. *See Grier v. Colvin*, 2015 WL 4602889, at *9 (N.D. Ala. July 30, 2015) (Hopkins, J.). There was nothing in the record comparing the cost of cigarettes to that of mental health treatment, although common sense suggests the prices are not at all comparable. This compels the conclusion that the comment was nothing more than a platitude about the virtue of thrift—a topic that seems beside the point.

allegedly limited attention span, "she could watch television, handle money accounts, [and] prepare simple meals daily." (Tr. 35). The ALJ also observed that while she claimed her husband cares for their daughter and performs most of the household chores and shopping, she also claimed that he was disabled due to neck and back pain, "which is inconsistent with the physical activities required for caring for an infant child and performing household chores and shopping." (Tr. 35). Further, Springer reported at her mental consultative examination that she cares for her daughter. (Tr. 35).

The determination of credibility is the province of the ALJ, tempered by his duty to explain his credibility determination. *See Holt v. Sullivan*, 921 F.2d 1221, 1223–24 (11th Cir. 1991). The ALJ has highlighted contradictions in the statements and the record, and the record does not reveal any evidence that more than ambiguously supports Springer's statements.[10] A reasonable person, *see Bloodsworth*, 703 F.2d at 1239 could determine that Springer is not credible at all based on these inconsistencies. Therefore, the ALJ's determination that the statements should be discredited is based on "more than a scintilla, but less than a preponderance;" *id.*, i.e.,

---

[10] For instance, the Med-West visits revealing that Springer had pain, fatigue, and co-morbid lupus suggest that she had some of the symptoms she described, but they do not compel the conclusion that her symptoms are as severe as she claims. Further, Dr. Sharma's observation that she is able to locomote normally, tr. 269, contradicts the claims in the statements that she has immense difficulty moving.

substantial evidence.

The ALJ's Nietzschean second reason is no reason at all. First, it is almost a tautology that objective verification of a witness's statement is impossible. *See United States v. Hall*, 165 F.3d 1095, 1119 (7th Cir. 1999) (Easterbrook, J., concurring) (quoting *Krist v. Eli Lilly and Co.*, 897 F.2d 293, 297 (7th Cir. 1990) (Posner, J.) ("The basic problem about testimony from memory is that most of our recollections are not verifiable."). Whatever significance that observation may have for policy discussions, it is outside of the scope of adjudication. *Cf. id.* ("[A] trial about the process of trials would divert attention from the main question."). Second, this court has noted before, and takes the opportunity to do so again, that there is no requirement that testimony regarding daily activities be objectively verified. *Grier v. Colvin*, -- F.3d -- 2015 WL 4602889, at *14 (N.D. Ala. July 30, 2015) (Hopkins, J.). Third, "[i]f a claimant is not required to provide objective proof of pain, it follows that the claimant's testimony regarding daily activities does not need to be objectively verified either." *Id.* Finally, even if the ALJ's reason is a euphemistic way of simply saying "I do not believe her," the ALJ must provide reasons for discrediting a witness's statement; *Holt*, 921 F.2d at 1223–24, he cannot simply say "I do not believe her for the following reasons [...], and reason number two is because I do not believe her."

The third reason, the weakness of medical evidence, does not appear to be elaborated. On the other hand, perhaps it is merely elaborated so obliquely that it appears to be an argument about contradictions in the record. (*See* tr. 33). "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943). While clearly disclosed, the ALJ's contention that the medical evidence is weak is not adequately—or even perfunctorily—sustained, so this reason for discounting the statements must be disregarded.

The ALJ's opinion is far from perfect. Nonetheless, the evidence in the record of Springer's physical impairments reveals medical records from Ashley Wise and Dr. Sharma that are ambiguous, at best, as to the effect of lupus Springer's capacity to work. The letter from Dr. Pool is so conclusory as to be useless, and the record does not reflect that Dr. Pool ever examined or treated Springer. Finally, while the statements from Springer and her mother are graphic, the ALJ has offered particular reasons supported by substantial evidence to disregard them. The Administrative Law Judge's findings of fact and conclusions of law are **AFFIRMED.** A separate final judgment will be entered.

**DONE** and **ORDERED** this 28th day of October, 2015.

VIRGINIA EMERSON HOPKINS
United States District Judge